# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOYLE RAY HAM, JR., *Plaintiff*, v. DISTRICT OF COLUMBIA, *Defendant.* | Civil Action No. 16-1720 (RDM) |

## MEMORANDUM OPINION

This is the second Title VII action brought by Plaintiff Doyle Ray Ham, Jr., proceeding *pro se*, challenging his non-selection for a position as a police officer with the Washington, D.C. Metropolitan Police Department ("MPD"). In 2013, Ham, an African-American man, sued the District of Columbia based on the MPD's rejection of his 2007 job application on the ground that he had been arrested (although not convicted) for assault in 1984. *See Ham v. Metro. Police Dep't*, No. 13-1527, 2014 WL 98641 (D.D.C. Jan. 10, 2014). This Court concluded that Ham failed to timely exhaust his administrative remedies, granted summary judgment in favor of the District, and dismissed the case. *Id.* at *1.

In 2015, Ham re-applied to the MPD, and his application was once again rejected due to criminal activity discovered during his background check. Dkt. 1 at 2 (Compl. ¶ 3). The following year, Ham commenced this second action, this time alleging that the MPD's 2015 decision not to hire him was the product of both racial discrimination and unlawful retaliation for the protected activity he took after the MPD rejected his 2007 employment application. *Id.* at 1 (Compl. ¶ 1). Ham also sought to reopen his 2013 case and to renew his challenge to his 2007 non-selection because the 2013 case "is connected to this case" and because he was allegedly

"denied due process in" the 2013 case. *Id.* at 3 (Compl. ¶ 14). The Court previously granted the District's motion to dismiss Ham's complaint to the extent it challenged (once again) his 2007 non-selection. *Ham v. District of Columbia*, No. 16-1720, 2017 WL 1628872, at *2–3 (D.D.C. May 5, 2017). The District now moves for summary judgment on Ham's remaining claims, which challenge his 2015 non-selection. Dkt. 33 at 15–16. For the reasons explained below, the Court will grant the District's motion for summary judgment.

## I. BACKGROUND

The Court recounted much of the relevant background in its prior opinion, *see Ham*, 2017 WL 1628872 at *1–2, and will, accordingly, only briefly outline the facts and allegations relevant to the pending motion. In 2007, Ham applied for a position as an officer with the MPD, but his application was rejected because he had been arrested for (although not convicted of) assault in 1984. *See* Dkt. 1-1 at 39, 50, 54. Ham later filed suit in 2013, challenging his non-selection, but the action was dismissed for failure to timely exhaust administrative remedies. *Ham,* 2014 WL 98641 at *1. Ham appealed, and the Court of Appeals affirmed, *see Ham v. Metro. Police Dep't*, No 14-7032, 2014 WL 4628886 (D.C. Cir. Aug. 5, 2014), and the Supreme Court denied Ham's petition for a writ of certiorari, *see Ham v. Metro. Police Dep't*, 574 U.S. 1035 (2014).

In 2015, Ham again began the application process to join the MPD. Dkt. 33-1 at 6 (Ham Dep. 10:10–14). Despite "pass[ing] the first phase of the application process" and being "conditionally approved as a candidate for a police officer," Dkt. 35-1 at 4 (Pl. Ex. 2), Ham later received an email from the MPD informing him that, "[b]ased upon information obtained during" his background check, the MPD had "determined that [he was] ineligible for the [police officer] position due to criminal activity," Dkt. 33-1 at 73 (Def. Ex. 12). Ham filed an

administrative appeal of that decision and later received a final decision from the MPD "determin[ing] that [he] remain[ed] not best qualified for the position." *Id.* at 75 (Def. Ex. 13). Ham filed an EEOC complaint on May 27, 2016, asserting that the MPD "unfairly denied [his] application" because he was not convicted of the assault charge the MPD cited to justify his non-selection and because the MPD "has hired other races with convictions on [their] record[s]." Dkt. 1-1 at 45. The EEOC dismissed his complaint on June 10, 2016, *id.* at 1, and Ham commenced this action on August 24, 2016, Dkt. 1.

In this action, Ham alleges racial discrimination and unlawful retaliation for the protected activity he took after the MPD rejected his employment application in 2007. Dkt. 1 at 1 (Compl. ¶ 1). Ham also sought to reopen his 2013 case and to renew his challenge to his 2007 non-selection because of its alleged connection to his 2015 non-selection. *Id.* at 3 (Compl. ¶ 14). The District, in turn, moved to dismiss Ham's complaint to the extent it challenged his 2007 non-selection on *res judicata* grounds. Dkt. 8. The Court agreed and dismissed the portion of Ham's complaint based on his 2007 non-selection claims. *Ham,* 2017 WL 1628872, at *1. The District now moves for summary judgment with respect to Ham's remaining claims, which are based on his 2015 non-selection. Dkt. 33.

## II. LEGAL STANDARD

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A). "Once the moving party has met its 'initial responsibility of informing the . . . court

of the basis for its motion,' the party opposing summary judgment must point to 'specific facts [in the record] showing that there is a genuine issue for trial.'" *Angelex, Ltd. v. United States*, 907 F.3d 612, 617–18 (D.C. Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986)). "If the evidence" offered by the non-movant "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citations omitted). In addition, summary judgment is appropriate when, "after adequate time for discovery," the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322.

### III. ANALYSIS

The remaining portions of Ham's complaint challenge his 2015 non-selection, asserting that it was the product of racial discrimination and unlawful retaliation for his 2013 suit against the District. *See* Dkt. 1 at 1 (Compl. ¶ 1). The District responds that the MPD "had a legitimate, non-discriminatory reason to deny" Ham's application because "his criminal and personal record disqualified him from further consideration under the [MPD's] personnel regulations," and that the MPD was motivated neither by racial discriminatory animus nor by retaliation. Dkt. 33 at 11. The Court concludes, based on the evidence the parties have identified, that no reasonable jury could find that the District's failure to hire Ham was based on racial animus or retaliation, rather than the MPD's asserted legitimate reason. The Court will first address Ham's racial discrimination claim and then proceed to his retaliation claim.

## A. Racial Discrimination

The plaintiff in a Title VII action alleging racial discrimination bears "the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

> To establish a prima facie case, the plaintiff must show that (1) he is a member of a protected class; (2) he applied for and was qualified for an available position; (3) despite his qualifications he was rejected; and (4) either someone not of his protected class filled the position or the position remained vacant and the employer continued to seek applicants.

*Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000). Once the prima facie case is established, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. To satisfy this burden, the defendant must offer competent evidence sufficient to permit a reasonable factfinder to conclude that the employer was motivated by its proffered legitimate reason. *See Figueroa v. Pompeo*, 923 F.3d 1078, 1087–88 (D.C. Cir. 2019). The burden then shifts back to the plaintiff to show that the employer's "stated reason for [the plaintiff's] rejection was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804.

Significantly, "once the employer asserts a legitimate, nondiscriminatory reason for its actions," the question of whether the plaintiff has properly made out a prima facie case "is no longer relevant." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)); *see also Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (because "the prima facie case is a largely unnecessary sideshow," once "an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not–*and should not*–decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*" (emphasis in original)). Therefore, the

court must turn directly to the ultimate issue of "discrimination *vel non*." *Bernanke*, 557 F.3d at 678 (quoting *Aikens*, 460 U.S. at 714–15). In doing so, the court must decide whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race." *Brady*, 520 F.3d at 494.

The District has proffered evidence that the MPD had two legitimate, non-discriminatory reasons for rejecting Ham's application. Dkt 33 at 17; *see also Figueroa*, 923 F.3d at 1092 (requiring the employer to "proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions"). First, the District maintains that Ham had an "outstanding arrest warrant . . . [that] disqualified him from further consideration under [the D.C. Personnel Regulations]." *Id.*; *see also* Dkt. 33-2 at 9 (Haiman Decl., Ex. 2) (providing arrest warrant). Second, it asserts that Ham was also disqualified under the D.C. Personnel Regulations because he falsely denied having ever physically assaulted anyone and having ever failed to appear in court for a traffic ticket. Dkt. 33 at 7–8 (SUMF ¶¶ 37–44); *see also* Dkt. 33-2 at 14–17 (Haiman Decl., Ex. 3) (providing Ham's answers to personal history questions); *id.* at 3 (Haiman Decl. ¶¶ 9–10); Dkt. 33-1 at 44–45 (Def. Ex. 4); 6-B D.C. Municipal Reg. § 873.11(m) & (n). Thus, under *Aikens* and *Brady*, the question whether Ham made out a prima facie case is irrelevant, and the Court turns directly to the central issue: whether the record contains sufficient evidence for a reasonable jury to find that racial discrimination, and not Ham's disqualification, motivated the District's failure to hire him.

Ham first points to his "conditional letter of appointment," Dkt. 35-1 at 4 (Pl. Ex. 2), as evidence that he was substantively qualified for the position because it shows that he "[s]ucessfully complet[ed] the initial pre-screening background [check]," Dkt. 35 at 6. The letter

6

stresses, however, that the background check had not yet been fully completed and notes that conditional letters of appointment may be "withdrawn." Dkt. 35-1 at 4 (Pl. Ex. 2); *see also* 6-B D.C. Municipal Reg. § 873.1(a) ("When an offer of employment is 'conditional,' it is pending the successful completion of the remaining portion of the selection process."). And, in fact, Ham received his conditional letter a week before his application was even assigned to an investigator for review. *Compare* Dkt. 35-1 at 4 (Pl. Ex. 2) (conditional letter dated July 23, 2015) *with* Dkt. 33-2 at 6 (Haiman Decl., Ex. 1) (background investigation memo noting that the case was assigned to the investigator on July 30, 2015). According to the District, during this review, the investigator discovered that Ham had "an outstanding warrant with Prince George County for Assault [in the] Second Degree, which was issued on June 22, 2015," about a month prior to Ham's application to become a police officer. Dkt. 33-2 at 7 (Haiman Decl., Ex. 1); *compare id.* at 9 (Def. Ex. 2) (Ham's arrest warrant dated June 22, 2015), *with id.* at 14 (Haiman Decl., Ex. 3) (Ham's application dated July 23, 2015). The investigator contacted the Prince George's County Sheriff Department and confirmed that the warrant was still active. Dkt. 33-2 at 7 (Haiman Decl., Ex. 1). As the District notes, D.C. Personnel Regulations provide that "[a] candidate is ineligible to become a police officer if the candidate . . . is pending final disposition on a criminal charge." Dkt. 33-1 at 44–45 (Def. Ex. 4); 6-B D.C. Municipal Reg. § 873.11(i). Thus, upon the discovery of this active outstanding warrant, Ham was disqualified from further consideration.

Ham disputes neither the existence of this warrant nor the fact that it was outstanding at the time of his application. Instead, he asserts that he was "never informed . . . of the open warrant" and that it was a "frivolous charge" for which he was "never convicted." Dkt. 35 at 11. Although the investigator concedes that she never informed Ham of the outstanding warrant, *see*

7

Dkt. 33-2 at 7 (Haiman Decl., Ex. 1), that fact has no bearing on the existence of the outstanding warrant or the fact that it constituted a disqualification under the D.C. Personnel Regulations. As a result, no reasonable jury could find, based on the facts that Ham was issued a conditional letter of appointment and was not told about the outstanding warrant, that Ham was not hired because of racial animus as opposed to the legitimate nondiscriminatory reason proffered by the MPD.

Ham next relies on a proposed comparator list, arguing that it supports his claim of racial discrimination. This argument fails as well. "A plaintiff can establish pretext masking [a] discriminatory motive by presenting 'evidence suggesting that the employer treated other[s] . . . of a different race . . . more favorably in the same factual circumstances.'" *Burley v. Nat'l Passenger Rail Corp.,* 801 F.3d 290, 301 (D.C. Cir. 2015) (quoting *Brady*, 520 F.3d at 495). But comparator evidence is of value only if the comparators are similarly situated to the plaintiff in terms of relevant characteristics. *See Waterhouse v. District of Columbia*, 298 F.3d 989, 995–96 (D.C. Cir. 2015)) ("In the absence of evidence that the comparators were actually similarly situated to [the plaintiff], [the comparator] allegation[s] added nothing to [the plaintiff's] claim that the defendants' explanation . . . was mere pretext.").

Ham attempts to show racial discrimination based on a list of 55 non-African American comparator applicants who he contends were deemed qualified and subsequently hired despite also having criminal histories.[1] *See* Dkt. 35-1 at 7–8 (Pl. Ex. 3). Ham argues that these

---

[1] During discovery, Plaintiff was given the opportunity to review hundreds of applications and selected 55 applicants who he believed were appropriate comparators. Zenobia Mack, a Senior Police Officer in the MPD's Recruiting Division reviewed the records of the 55 applicants selected by Plaintiff and created a chart that differs from that offered by Plaintiff. Dkt. 33-3 at 1–2 (Mack Decl. ¶¶ 1–6); *id.* at 5–6 (Mack Decl., Ex. 1); Dkt. 35-1 at 7–8 (Pl. Ex. 3). These differences do not raise a genuine dispute of material fact, however, because Defendant does not

comparators were shown "preferential treatment," Dkt. 35 at 11, because each had "been arrested and/or convicted" but was still "given the opportunity to address [and resolve] any negative issues," Dkt. 35-1 at 8 (Pl. Ex. 3). The District responds that "none of the 55 comparators had criminal records that would automatically disqualify them from employment," Dkt. 37 at 7, because none of them were "pending final disposition on a criminal charge," 6-B D.C. Municipal Reg. § 873.11(i). The District asserts that Ham's comparator list is unhelpful because the individuals on it were not valid comparators; they were qualified to serve under the D.C. Personnel Regulations, but he was not. *See* Dkt. 37-1 at 1–2 (Mack Decl. ¶¶ 2, 5) (stating that "[n]one of the 55 applicants had a criminal background that automatically disqualified them from employment under Section 873.11"). Importantly, Ham does not dispute the truth of this assertion. He does not contend, for example, that any of the individuals on the list had active, unresolved criminal charges against them or that he did not have an open warrant.

No reasonable jury could find, based on a list of individuals of other races who did not share the same disqualifying characteristic that Ham possessed, that Ham was not hired because of his race, as opposed to his possession of that disqualifying characteristic. The list does not negate the fact that Ham had an outstanding warrant at the time he applied and that, as a result, he was not qualified for the position he sought. The list is unhelpful because it focuses on the general criminal histories of the comparators rather than whether those histories made them automatically ineligible at the time they applied, as he was. *Cf. Jones v. Mukasey*, 565 F. Supp. 2d 68, 77 (D.D.C. 2008) (concluding that whether proposed comparators were indeed similarly

---

dispute that the some of these applicants had criminal records. Rather, it asserts that none of the 55 applicants had criminal records that disqualified them and thus they were not similarly situated to Ham, who was disqualified by virtue of his outstanding warrant. Dkt. 33-3 at 2 (Mack Decl. ¶ 5).

situated was a question for the jury where both the plaintiff and the alleged comparators admittedly had some "candor issues"). Ham provides the Court with no evidence of a comparator who was also automatically ineligible under 6-B D.C. Municipal Reg. § 873.11(i) or any similar rule but was, nonetheless, hired. Because Ham has failed to identify a single comparator who was automatically disqualified under the D.C. Personnel Regulations, no reasonable trier of fact could find that the MPD's stated reason for rejecting Ham's application was pretextual and that the MPD was, in fact, motivated by racial animus.

Ham also takes issue with the District's second asserted basis for his disqualification as a candidate for the position—that he answered falsely in the personal history section of his job application when he denied having ever assaulted someone or ever having failed to appear in court. *See* Dkt. 35 at 2. Ham argues (1) that he did not actually assault anyone, and (2) that he mentioned both the incident for which he was arrested for assault and the traffic tickets for which he failed to appear in other portions of his application. *See id.* A plaintiff may survive summary judgment by showing "that an employer's explanation [for the challenged action] is false" if that showing also gives rise to the reasonable inference that the true motive for the action was discrimination or retaliation. *See Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015). The D.C. Circuit has held, however, that "an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false," *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2007), and that the employer is entitled to prevail if it "honestly believes in the reason it offers" for failing to hire a candidate, *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992)). This follows because, where an honestly held and reasonable belief supported an employer's decision, the inference of an unlawful true motive

10

does not arise. In *Brady v. Office of Sergeant at Arms*, 520 F.3d at 496, for example, the D.C. Circuit affirmed the district court's grant of summary judgment to the employer where the plaintiff "did not produce evidence sufficient to show that the [employer's] conclusion [that the plaintiff's underlying improper conduct had occurred] was dishonest or unreasonable."

Ham has not offered any evidence to show that the MPD's belief that he was disqualified because he answered personal history questions falsely was unreasonable or was not honestly held. In his employment application, Ham answered "no" to personal history questions asking about whether he had ever committed assault or failed to appear, but later described events that could support "yes" answers. Dkt. 33-2 at 15–17 (Def. Ex. 3). To be sure, the MPD investigator was able to ascertain the falsity of the "no" answers from this other information that Ham disclosed in his application. But, the fact that Ham discussed the underlying events elsewhere in the paperwork does not undermine the MPD's conclusion that he falsely answered the direct questions concerning this conduct. MPD also had access to documents that contradicted Ham's "no" answers to criminal history questions. *See* Dkt. 33-2 at 11 (Haiman Decl., Ex. 2) (statement of charge of second-degree assault); Dkt. 33-2 at 19, 21 (Haiman Decl., Ex. 4) (noting Ham's failures to appear for traffic tickets). Ham has not identified any evidence from which a reasonable jury could find that Defendant's determination that Ham answered the personal history questions falsely was so unreasonable as to give rise to a plausible inference of pretext. *See Brady*, 520 F.3d at 495–96 (emphasizing that "the issue is whether *the employer honestly and reasonably believed*" a certain fact upon which it based its employment decision). Nor has

he identified any evidence that would allow a reasonable jury to find that the MPD's refusal to hire him was, in truth, a product of racial animus.[2] *Id.* at 494.

The District has pointed to the dearth of evidence from which a reasonable jury could draw an inference of pretext or racial discrimination, and Ham has failed to carry his burden of proffering *some* evidence that might support his claim. The District is therefore entitled to summary judgment on Ham's racial discrimination claim.

## B. Retaliation

Ham also argues that he was not hired as a police officer in 2015 in retaliation for his EEOC complaint and earlier lawsuit challenging the MPD's 2007 refusal to hire him. The District responds, as discussed above, that it did not hire Ham in 2015 because he was not qualified for the job.

A prima facie case of retaliation requires that the plaintiff establish "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action . . . ; and (3) that a causal link connects the two." *Bernanke*, 557 F.3d at 677. As with discrimination claims, however, when a plaintiff brings a Title VII retaliation claim and the defendant articulates a legitimate, non-discriminatory reason for the challenged action, the Court does not dwell on whether the plaintiff has established the prima facie case of retaliation but, instead, evaluates "retaliation *vel non*." *Id.* at 678. Title VII retaliation claims "require[] proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (citation omitted). Thus, to survive a properly

---

[2] Ham asserts that the investigators never told him about the open warrant to give him the opportunity to correct it, Dkt. 35-1 at 8 (Pl. Ex. 3), but he points neither to any authority requiring them to do so nor to evidence suggesting that comparators of another race were informed of such disqualifying information and given the opportunity to resolve it.

supported motion for summary judgment, the plaintiff must proffer evidence sufficient to allow a reasonable jury to find, not only that the legitimate reason proffered is pretextual, but also that that the true motivation was retaliation. *See Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015); *see also Mount v. Johnson*, 174 F. Supp. 3d 553, 561 (D.D.C. 2016).

Ham has failed to carry this burden. First, he has offered no evidence to undermine the District's assertions that he had an outstanding warrant against him or that the MPD reasonably and honestly believed that the answers he gave to the personal history questions on his application were false, which, as explained above, disqualified him under the D.C. personnel regulations. *See Walker*, 798 F.3d at 1093–94. Second, Ham has not offered any evidence that might convince a reasonable jury that the MPD refused to hire him in retaliation for his protected activity. Ham asserts that because the investigator "knew about [his earlier] complaint with [the] MPD," Dkt. 35 at 9, and "recognized [his] name from past appeals," *id.* at 11, she "intentionally singled [him] out" so that he "would never be able to apply again," Dkt. 35-1 at 8 (Pl. Ex. 3). To be sure, Ham's application to the MPD Recruiting Branch did reflect his prior suit against the MPD, and thus the MPD had notice of that suit. *See* Dkt. 35-2 at 68. Notice alone, however, is not enough to permit a reasonable jury to find retaliation *vel non*. *See Bernanke*, 557 F.3d at 679 ("Of course, that [evidence of the employer's knowledge of protected conduct] would show intent [to retaliate] at the prima facie stage does not resolve the question of retaliation *vel non*."). Courts regularly grant defendants' motions for summary judgment, even when it is undisputed that the employer had knowledge of the protected activity. *See, e.g.*, *Forman v. Small*, 271 F.3d 285, 301 (D.C. Cir. 2001) (concluding that, although an employer "knew of the [plaintiff's] EEO complaint" when he decided not to promote the plaintiff, the plaintiff had still not pointed to sufficient evidence such that a reasonable jury could infer causation). Nor can Ham's conclusory

13

allegation that the investigator chose to get back at him when she "recognized his name from past appeals" suffice at summary judgment. *See Ginger v. District of Columbia*, 527 F.3d 1340, 1346–47 (D.C. Cir. 2008) (affirming summary judgment on retaliation claim where plaintiffs had offered no evidence supporting their conclusory allegation that an adverse action was instituted in response to their earlier-filed EEOC charges).

Accordingly, the Court will grant the District summary judgment on Ham's retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** the District's motion for summary judgment, Dkt. 33.

A separate Order will issue.

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date: January 9, 2020